BENJ. F. SIMMS plaintiff in error vs. SOUTHERN EXPRESS COMPANY defendant in error.

The public laws of the several States of the United States will be judicially recognized by the Courts of this State, when published by *authority* of the respective States; or may be proved, as required by law, under the great seal of the respective States.

This Court will not, as a general rule, control the discretion of the Court below, in granting a new trial, unless it is manifest there has been an abuse of that discretion, either in violation of law, or the principles of equity, as regulated by law.

Assumpsit.  New trial granted.  By Judge Gibson. Richmond Superior Court.  June Term, 1868.

Benj. F. Simms averred that said Company was a corporation, and a common-carrier from New Orleans, Louisiana, to Richmond, Virginia, and, as such, on the 18th of February,

1862, received from him, at New Orleans, to be delivered to R. H. Hunton, at Richmond, Virginia, ten bales of wool, worth $10,000, and undertook, and promised to deliver the same to him, but failed to do so, etc.

It was shown by plaintiff that, at said time, he, in person, did deliver said wool, 5,182 pounds, to defendant, as charged; that it was marked to R. H. Hunton, Richmond, Virginia; that the defendant undertook to deliver it to him at Richmond, (that he took a receipt for it but had lost it;) that it was then worth fifty cents per pound, and at the trial, was worth from thirty-seven and a half to forty cents per pound, in United States currency. And plaintiff testified that it never reached Richmond. The plaintiff having closed, defendant showed, by interrogatories of Jno. B. Hunton, (the date of which does not appear,) that he is a brother to said consignee, who is blind and helpless, and had not been capable of doing any business, by reason of impaired mind, for twelve months before the answers were taken; that in March, 1862, he and this consignee were connected in the manufacture of woolen goods; that he knew of no shipments of wool from plaintiff to said witness' factory, in February or March, 1862; that R. H. Hunton sold some wool to Crenshaw & Co., who were manufacturers of woolen goods, how much witness did not know, (nor did he give the date of said sale); that R. H. Hunton was in New Orleans in 1861 and 1862, and was to buy wool, all he could, for their factory, free of commissions.

A member of the firm of Crenshaw & Co. testified, that sometime after the 1st of March, in 1862, at Richmond, he bought eight bales of wool, (eight, he thought); he did not know who was the consignee, nor who sold it to him, but he knew that it was not an employee or agent of defendant; he bought it from a stranger, either at the Southern Express Company's office or at witness' own office; he saw them at the defendant's office; he thought he never received any wool from said consignee, unless that was from him.

They showed that the books of defendant in Richmond, were burnt. An agent of defendant, in the Richmond office,

up to 10th April, 1862, testified that the freight-bill, from New Orleans to Richmond, of February —, 1862, bore an entry of ten bales, consigned from New Orleans to R. H. Hunton, Fredericksburg, Virginia; the eight bales which arrived at Richmond, were stored in the storage-room of the company, because they were prevented from going to Fredericksburg, by reason of military movements. Shortly afterwards, they were delivered to Crenshaw & Co., of Richmond, Virginia, upon whose order, or by what authority, he could not say. The rules of the company required him, when goods could not be forwarded, to notify consignor or consignee, and hold them subject to order. Witness' recollection was that, under the custom, those goods were delivered on the order of the consignee, and he was positive that he did not deliver them without proper authority. He recollected this transaction, because it was unusual for such bulky freight to fail to reach destination, and because he required Crenshaw & Co. to pay charges, etc., upon the ten bales, promising to furnish the other two when they arrived, etc. Upon cross-examination, he testified that he quit defendant's employment 10th April, 1862; that he knew nothing of the usual passage of freight through the office ; but when any irregularity occurred, it had to be reported to him, and that is why his attention was called to this case.

The defendant further showed that, at the date of said shipment, they used, for freight, but one kind of receipt, in which was the following stipulation:

" It is further agreed, and is a part of the consideration of this contract, that The Southern Express Company is not to be held liable, for the property herein mentioned, for any loss or damage arising from the dangers of railroad, ocean, steam or river navigation, leakage, fire, or from any cause whatever, unless specially insured by it, and so specified in this receipt; which insurance shall constitute the limit of the liability of the Southern Express Company, in any event."

And it also contained a clause, declaring that they would not be liable for more than $50 00, unless the value of the goods was stated in the receipt. These receipts were signed by the company's agent.

Simms *vs.* Southern Express Company.

The evidence being closed, the defendant's attorney requested the Court to charge the jury that "the law of the place where the contract was made, governs the construction of the receipt in this case, and that the terms of that receipt exempt the defendant from liability for more than $50 00, and that plaintiff is bound by that condition." The Court refused so to charge; but charged that, "the defendant, being located in Georgia, the law of Georgia controlled the construction of the contract." The jury found for the plaintiff $2,591 00, with interest from 21st March, 1866. (The suit was brought 20th March, 1866.)

Thereupon, defendant's attorney moved for a new trial, upon the grounds that the Court erred in refusing to charge as requested, and in charging as he did, and because, except as to the two missing bales, the verdict was contrary to evidence, etc. The Judge ordered that there should be a new trial, unless plaintiff's attorneys would write off all the recovery for the said eight bales.

The plaintiff assigned this order as error, and, in the same bill of exceptions, the defendant assigns as error, the refusal to charge, and the charge as aforesaid.

BARNES & CUMMINGS for plaintiff in error.

W. T. GOULD, for defendant in error, cited Roberts vs. Riley, 15 Lou. An., 103, 23 U. S. Dig., 76.

WARNER, J.

There are two errors assigned in this case to the judgment of the Court below. First, that the Court erred in not charging the jury, as requested by defendant's counsel, as to the law of the place where the contract was made. If the law of the place where the contract was made be different from the law of this State, it is incumbent on the party who asserts it, to shew, by proper evidence, that difference, as applicable to the contract. This may be shewn by producing the public laws of Louisiana, or any other of the United States, as published by *authority*, or by a duly certified copy

of such law, properly authenticated, under the great seal of the respective States. Code, sections 3771, 3772. There was no evidence before the Court which would have authorized the charge, as requested, and the Court did not err in refusing it.

Upon looking into the evidence in this record, we find no error in the Court below in granting a new trial. The jury found a verdict for the value of the *ten* bales of wool, with interest, and we will not control the discretion of the Court in granting a new trial in this case.

Let the judgment of the Court below be affirmed.