## SEABOARD AIR-LINE RAILWAY *v.* PHILLIPS.

1. "The public laws of the United States, and of the several States thereof, as published by authority, shall be judicially recognized without proof."

    (*a*) When it appears in the manner above indicated that a particular law has been of force in another State, until the contrary is shown it is presumed that such law is still of force.

    (*b*) Quære: Do not the provisions of the Civil Code, §5231, quoted above, place the laws of other States, when "published by authority," upon the same footing as all laws of this State, both public and private, are placed by the provisions of the Civil Code, §5210, when so published?

2. A ground of a motion for a new trial which complains that "the court erred in charging the jury that the statute offered in evidence, as proof of the statute" on which the suit was based, was a statute of another State, when that question should have been submitted to the jury, and that this error naturally affects the entire charge whenever it undertakes to deal with the meaning of such statute, but which does not set forth any extract from the charge or the statute referred to, can not be considered.

3. A charge in the trial of a suit by an employee against a railway company, that if the plaintiff shows the defendant negligent "in some or all of the particulars" alleged in the petition, a presumption of negligence will arise against the defendant, though not exactly accurate, as it lacks the qualification that the negligence must have contributed to the injury, will be no ground for a new trial, when the petition sets forth no ground of negligence which did not contribute to the injury, and when in a subsequent portion

of the charge the attention of the jury is distinctly called to the qualification above referred to.

4. A general complaint that error was committed in refusing to admit in evidence ten or more rules of a railway company, offered at one time and as a whole, so far as appears from the motion for a new trial, is not good when any one of the rules was inadmissible.

5. In the trial of an action of the character above indicated, it is not, error to read to the jury, without comment, rules of the company which are in evidence, when there is no request for more specific instructions on such rules.

6. It was not error to admit evidence showing the customary way in which business of the railway company was conducted in the yard where plaintiff was injured, there being in evidence no rule of the company relating to the matter which was the subject of the evidence.

7. The evidence, though conflicting, was sufficient to authorize the verdict, which was not excessive in amount, and there was no error requiring a reversal of the judgment refusing a new trial.

Argued January 26, — Decided February 7, 1903.   Rehearing denied February 28, 1903.

Action for damages.   Before Judge Reid.   City court of Atlanta. June 23, 1902.

*Erwin & Erwin, Brown & Randolph*, and *Vasser Woolley*, for plaintiff in error.   *C. T. Ladson*, contra.

Cobb, J.   Phillips sued the railway company, alleging that, as a consequence of its negligence, he had sustained serious personal injuries which resulted in the amputation of his right leg below the knee.   He recovered a verdict for $7,000, and the defendant complains that the court refused to grant it a new trial.

1. The cause of action in this case originated in the year 1900 in the State of Florida, and therefore the rights of the parties are to be determined by the law of that State.   One of the questions made by the record is that there was nothing before the trial court showing what was the law of Florida at the date of the plaintiff's injuries.   The plaintiff produced a book entitled "Revised Statutes of Florida of 1892," purporting to have been "prepared under authority of, and adopted by, the legislature of Florida, and purporting to have been proclaimed as such revised statutes by the Governor of Florida," which contained provisions of law applicable to cases of the character now under consideration. Objection was made that the book should not be admitted as evidence, for the reason that there was nothing therein to indicate that its provisions were of force at the date of the plaintiff's injuries.   The code declares:   " The public laws of the United

States, and of the several States thereof, as published by authority shall be judicially recognized without proof." Civil Code, §5231. A volume of State laws, purporting on the title page to have been printed by order of the Governor, sufficiently shows publication by authority. 8 Am. & Eng. Enc L. (1st ed.) 437 13 Id. (2d ed.) 1067. The book produced certainly showed that the laws therein contained were of force at the date they were proclaimed, and until the contrary appeared there would be a presumption that such laws were still of force. Does not the section of our code above quoted place the laws of other States of the Union, "as published by authority," upon the same footing as to judicial recognition as laws of the United States and the laws of this State? It does so in terms as to the laws of the United States, and uses practically the same language as is found in the section relating to laws of our own State. At one time in this State private laws were required to be proved as other facts, but now all laws, public and private, and resolutions of the General Assembly, are "recognized judicially without proof," when "published by authority." Civil Code, § 5210. Was it not the intention of the lawmakers that the laws of this State, the laws of the United States, and the laws of our sister States should all be in the same manner judicially recognized "without proof," when "published by authority"? Can not any court in this State, including this court, take judicial notice of the law of any State in the Union when it has produced to it the law of such State "published by authority," just as it would in the case of a law of this State so published? This is certainly true as to laws of the United States, and laws of other States are by the code placed upon identically the same footing as laws of the United States.

If such is the law, is it not founded upon sound reason? Why should not this court, or any court of this State, in cases controlled by the laws of other States, be permitted to inform itself as to what is the law of such other State by simply looking into a book which complies with all the requirements of the code, and then decide the case according to what is really the law, not what is only presumptively the law, and often not actually the law? Of course, if a book containing the laws as published by authority is not accessible, then, in the absence of a copy of the law under the great seal of the State, the case would

generally have to be determined by a presumption that the common law prevailed in the other State. Has not the day passed when a court of this State should be required to administer as the law of a sister State that which is not the law, when it has before its eyes an open book "published by authority," showing what is the law, refusing to see what may be seen by all men, merely because it was not formally offered as evidence on the trial? This court has in some cases satisfied itself as to what was the law of another State by a resort to the laws of such State, "published by authority," when there was nothing in the record referring to such law. See *Barranger* v. *Baum*, 103 *Ga.* 466 (7), 480 (7). See also *Massachusetts Benefit Association* v. *Hale*, 96 *Ga.* 802. While it does not appear in the reported decision of this case that the Massachusetts statute was not invoked in the trial court, an examination of the original record shows that no reference whatever was made to this law in the pleadings of the parties. The contract sued on was by its terms to be governed by the law of Massachusetts, and it does not appear what was treated in the court below as the law of that State. The code still requires that "foreign laws and judgments must be authenticated under the great seal of their respective States." Civil Code, § 5232. The term "foreign" in the section just cited is applicable, not only to countries outside of the United States, but also to the different States within the United States, so far as their relation to each other is concerned. In regard to the method therein provided for authenticating the laws of other States of the Union, the method provided in the section is merely cumulative of that provided in the section immediately preceding for the courts of this State to inform themselves as to what is the law of another State of the Union. See *Simms* v. *Southern Express Company*, 38 *Ga.* 129. The fact that strictly foreign laws when published by authority are generally inaccessible, and the laws of other States of the Union are generally accessible, may have been the reason why the code provided for the judicial recognition of the one without proof, and not of the other. If the decisions by this court, as well as those by other courts, laying down the rule that laws of other States must be proved as facts, are critically examined, it will no doubt be found that they were dealing with cases where the law required that such laws should be authenticated under the great seal

of the State, or where the law offered in evidence was so authenticated. Such laws may be admitted in evidence in this State when so authenticated, and when so admitted they are to be treated as other facts proved in a similar way. See, in this connection, *Simms* v. *Express Co.*, supra; *Chattanooga R. Co.* v. *Jackson,* 86 *Ga.* 681; *Craven* v. *Bates,* 96 *Ga.* 80; *Norman* v. *Goode,* 113 *Ga.* 126. We do not think that the present case requires an authoritative ruling on this subject, and these suggestions are now made simply that the profession may take the subject under thoughtful consideration.

2. The 7th ground of the motion for a new trial is in the following words: "Because the court erred in charging the jury that the statute offered in evidence as proof of the statute on which this suit was based was a statute of Florida, when it should have been submitted to the jury as a question of fact whether the proof introduced showed the statute of Florida to be as alleged; and this error naturally affects the entire charge of the court, wherever he undertakes to charge the jury the meaning and effect of that statute." Counsel for defendant in error insists that this ground should not be considered, for the reason that that portion of the charge which is excepted to is not set forth. We think this objection is well taken. We can not tell from this ground exactly what the court charged. It was a charge relating to a statute which is not set forth, and resort must be had to the brief of evidence to determine what statute is referred to. It was argued that the charge was subject to the objection that the court expressed an opinion as to what had been proved. The language of the charge excepted to not being set forth in the motion for a new trial, we can not tell whether this objection was well founded. See, in this connection, *Smith* v. *Owen,* 112 *Ga.* 531 (1); *St. John* v. *Leyden,* 111 *Ga.* 152 (4).

3. Complaint is made that the court erred in charging the jury that if the plaintiff made it appear that the defendant was negligent "in some or all of the particulars" alleged in the petition, a presumption of negligence would arise against the defendant, without stating that there must be proof of an act of negligence which proximately contributed to the injury. There was no error in this charge, as an examination of the petition shows that there was no allegation of negligence which did not contribute proximately to the

injury. It also appears that in another portion of the charge the judge distinctly instructed the jury that the plaintiff could not recover unless the alleged negligence proximately contributed to the injury. See, in this connection, *City of Augusta* v. *Tharpe*, 113 *Ga.* 153 (2).

4. One of the grounds of the motion for a new trial was as follows: "Because the following material evidence offered by this applicant was illegally withheld from the jury against its demand, the court ruling that the same was inapplicable to the case on its face, which ruling the applicant alleges to be error: Rules from the Rule Book known as 'Rules and Regulations for the Government of Employees of the Seaboard Air-Line,' and under the head of General Rules, as follows: 'Rule 1. Employees whose duties are prescribed by the rules must provide themselves with a copy.' 'Rule 3. All employees are required to be conversant with and obey the rules and special instructions. If in doubt as to their meaning, they must apply to proper authority for explanation.'

"And under the head of 'Rules for Enginemen:' 'Rule 47 c. They are jointly and equally responsible with the conductor for the safety of the train and the proper use of all precautions required by the Rules and Regulations; and although they are under the direction of the conductor as regards management of trains, they will not obey any instructions which imperil the safety of the train or involve a violation of the rules.'

"Under the head of 'Train Rules, Movement of Trains:' Rule 420. Conductors and engineers will be held equally responsible for the violation of any of the rules governing the safety of their trains, and take every precaution for the protection of their trains, even if not provided for by the rules. Rule 421. In all cases of doubt or uncertainty, take the safe course and run no risks.'

"From the Florida Central and Peninsular Rules, being contained in the pamphlet purporting to contain 'Rules for the Government of the Employees of the Florida Central & Peninsular Railroad,' and under the head of 'Train Rules and Movement of Trains:' Rule 120 and Rule 121. These rules verbatim with the Seaboard Rules 420 and 421 above.

"Under the heading of 'General Rules for Train and Yard men:' 'Rule 203. No general relation of superiority exists between conductors and enginemen, firemen, baggagemen, or brakemen; nor

between enginemen and firemen or other trainmen; nor between yardmasters and enginemen, foremen, or other trainmen or yardmen; nor between train dispatchers, conductors, enginemen, firemen, baggagemen, or brakemen.    The duty of each employee is herein set forth, and, except as herein provided, neither employee has any superiority over the other.    Rule 204.    All persons entering or remaining in the service of the company are warned that in accepting or retaining employment they must assume the ordinary risks attending it.    Each employee is expected and required to look after and be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars and in all movements of trains.'

"Under the head of 'Rules for Enginemen,' page 75:  'Rule 389. Enginemen of all light engines or extra trains must sound the whistle eighty rods before reaching all curves, and will enter curves with train or engine under full control, sounding the whistle at intervals while passing through the curve.'

"Under the head of 'Rule for the Movement of Trains by Telegraphic Orders:'    Rule 518.    Orders to persons in charge of work requiring the use of track in yards or at other points, authorizing such use when trains are late, must be delivered in the same way as to conductors and enginemen of trains.'

"Under the head of 'General Rules:'    'Rule 4.    Every employee of this company, whose duties are in any way prescribed by these rules, must always have a copy of them at hand when on duty, and must be conversant with every rule.    He must render all the assistance in his power in carrying them out, and immediately report any infringement of them to the head of his department."

So far as appears from this ground, all the rules which were rejected were offered together.    If any one of the rules thus offered was inadmissible, there was no error in rejecting the whole number, without reference to whether the others were relevant or material.    See *Chambers* v. *Wesley*, 113 *Ga.* 343 (2).    The plaintiff was an engineer on a switch-engine, and was injured while running his engine in one of the yards of the company.    All of these rules, except rules 1, 3, 4, 203, 204, 518, manifestly apply to the operation of trains and engines between stations, and not to switch-engines operating within the yards, and were therefore irrelevant and properly rejected.    Rule 518 does not apply to enginemen; for

the rule says the person to whom the rule relates must receive orders in the same manner *as enginemen.* Rules 1, 3, 203, 204 might have been admissible if they had been offered separately from the others.

5. Several grounds of the motion complain that the court erred in reading certain rules of the company to the jury without construing them. There was no error in this. If any particular explanation or construction of the rules was desired, it should have been made the subject of a request. Even in a criminal case it has been held that the reading of the sections of the code relating to one of the offenses of which the accused might have been convicted, without explanation or construction, was not error, in the absence of a request for more detailed and specific instructions. *Hanye* v. *State,* 99 *Ga.* 213 (3).

6. Complaint is made that the court erred in allowing a witness to testify that it was the custom in the yard where plaintiff was hurt for yard engineers to work within yard limits on the main line, on the time of delayed trains, without orders. There was no error in admitting this evidence. There being no rule of the company in evidence relating to this matter, it was proper to hear testimony as to the way in which the business of the company in this particular was generally carried on at the place where the plaintiff was at work at the time he was injured.

7. The foregoing disposes of such of the various assignments of error as we think it necessary to deal with at any length. After a careful and laborious examination of this record and the briefs of counsel, no error has been made to appear which would authorize a reversal of the judgment. There was no error in any of the rulings on evidence, or in the charges complained of. The evidence, though conflicting, was amply sufficient to warrant the verdict, which was not excessive in amount.

*Judgment affirmed. By five Justices.*

### On Rehearing.

An application for a rehearing is made, upon the ground that, under the facts as they appear in the record, the ground of the motion for a new trial which is set forth in the fourth division of the original opinion is not within the rule laid down in the case of *Chambers* v. *Wesley,* 113 *Ga.* 343 (2). It is said that it appears

from the record that the rules set out in the ground just referred to were allowed to go in evidence under a written agreement between counsel; that they were not formally offered in evidence at all, but were admitted under that agreement, subject to the ruling of the court as to whether any one or more of them were admissible. In the application attention is called to the 5th ground of the amendment to the motion for a new trial, in which the agreement referred to is set forth, and also to the brief of evidence, in which the agreement is likewise set forth. The ground of the motion which was under consideration in the fourth division of the original opinion was the first ground of the amendment, and nothing appears in that ground except what was set forth in the opinion. In passing upon a ground of a motion for a new trial, where a question is raised as to the admissibility of evidence, this court will, in order to determine whether the ruling is erroneous, look only to what is set forth in the ground itself, or exhibited with the motion and distinctly referred to in the ground as a part thereof. See *Hicks* v. *Mather*, 107 *Ga.* 77, 78–79; *Thompson* v. *Mtge. Co.*, Id. 832 (2), 834; *Torras* v. *Raeburn*, 108 *Ga.* 345 (1), 347–8; *Bourquin* v. *Bourquin*, 110 *Ga.* 440 (1), 441. Under no circumstance can an incomplete ground be made complete by a reference to the brief of evidence. It may be rendered complete by a reference to an exhibit to the motion. In the present case the plaintiff in error can take no advantage of the agreement referred to in the application for a rehearing, even if it would take the case out of the rule of practice referred to in the original opinion, for the reason that the agreement is not embodied in the ground of the motion containing the assignment of error dealt with in the opinion, nor attached to the motion as an exhibit. No sufficient reason for a rehearing has been shown.            *Application denied.*