## MOORE v. GARLAND.

<div style="float:right">87 623<br>118 569</div>

1. The charge of the court that Garland's assignment was sufficient, and that Moore could not go behind. it, was not error under the facts of this case.
2. It appears from the evidence that what Moore bought was a license to use and sell in Crawford county, and the evidence shows that he got what he bought.
3. It further appears from the evidence that Shellnut, the patentee, reserved the exclusive right to make the machines; and also, that he acquiesced in the license to Moore to use and sell.
   July 13, 1891.

Assignment. Charge of court. License. Before Judge MILLER. Crawford superior court. October term, 1890.

Reported in the decision.

L. D MOORE, by brief, for plaintiff in error.
W. S. WALLACE, by brief, contra.

LUMPKIN, Justice.

A case between these same parties, from which the litigation between them in the present case evolved, was before this court at March term, 1887, and is reported in 78 Ga. 764. It was then held it was no sufficient defence to plaintiff's action that no assignment of the patent-right had been made to defendant before demanding payment of his note, there being no evidence to show that defendant was to have such assignment before paying the note; and that, in the absence of such proof, the presumption from the note itself would be, he was entitled to such assignment when he paid the note. The judgment of the court below in

favor of the plaintiff was then affirmed, and in our
opinion, this ought to have finally ended the contro-
versy. In delivering the opinion, however, Justice
BLANDFORD remarked that the defendant " could yet
defend the case, after judgment, by tendering .the
money and demanding the assignment; and upon the
refusal to assign this right, a court of equity would not
hesitate to enjoin the collection of the judgment." In
our opinion, the words quoted were used rather *ar-
guendo* in giving a reason for the conclusion reached,
than as being really necessary to a disposition of the
case as it then stood. Treating these words, however,
as properly a part of the adjudication then made, we
are nevertheless of the opinion that the judgment of
the court below upon the last trial was correct. The
complainant, Moore, who sought to enjoin the collec-
tion of the judgment Garland had obtained against
him, himself introduced an assignment from Garland
which conveyed to him the right " to use and to sell
said patent within the limits of Crawford county,
Georgia." Upon the authority of Rice *v.* Boss, 46
Fed. Rep. 195, and the cases there cited, this instru-
ment conveyed to Moore only a *license* to use and to
sell the " Shellnut Water Engine " in Crawford county.
The original note was not introduced in evidence, or
considered by the jury whose verdict· is now under
review, and if it would have proved that Moore was
entitled to an assignment of the patent-right itself,
upon paying the note, this proof was wanting at the
last trial, at which the evidence established that what
he bought was only the license above mentioned. It
was shown that Shellnut, the original patentee, had
never parted with, but expressly reserved, the right to
manufacture the engines. This reservation made all
the subsequent transactions hereinafter mentioned in
connection with said patent-right amount in law to

nothing more than licenses, under which the licensees' rights were limited to what they actually purchased. The first of these transactions was one by which Shellnut authorized one Sims to use and sell these engines in the State of Georgia on certain conditions, with which Sims failed to comply, and in consequence thereof, Shellnut, about July 1st, 1885, again became the proprietor of such rights as Sims had in all the counties in Georgia which he had failed to dispose of. While Sims was operating under his contract with Shellnut, he bargained the right to use and sell these engines throughout the State of Georgia to one Holland, who afterwards received back the notes he had given for his purchase, and abandoned all claims thereunder.   Before doing so, however, Garland, as his agent, on April 19th, 1885, had made the contract with Moore, which amounted, as we have shown, to only a license to the latter to use and to sell these engines in the county of Crawford.   The assignment of this license, which was made by Garland after the rendition of the judgment of this court upon the former trial, was ratified by Holland by a written instrument reciting that on the 27th day of March, 1885, he was the owner of this patent-right for the entire State of Georgia, and as such owner, had authorized Garland to sell the right in certain counties of the State, including the county of Crawford.   It further appears from the evidence that Sims "made arrangements with Garland to sell counties in South Georgia," and that Shellnut himself acquiesced in the transaction between Garland and Moore.   In view of these facts, and the authority cited above, it seems clear that neither Sims, nor Holland, nor Garland, ever had the right to sell, nor Moore the right to expect that he was purchasing, anything more than a mere license, and it is quite apparent that no person in any way connected with or

v 87-40

interested in this patent-right could by any possibility dispute or interfere with his right to exercise his license in Crawford county; nor does it appear that any one has ever sought to do so, or desires to do so. Hence, we say that under the above recited facts, the charge of the court that Garland's assignment to Moore was sufficient and that Moore could not go behind it, was not erroneous; and further, that Moore now has what he bought, and no legal reason appears why he should not pay for it. On none of the other grounds of the motion, all of which we have carefully considered, was Moore entitled to a new trial. *Judgment affirmed.*